IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-cv-01056-GMS |
| | ) | |
| ENERGY*SOLUTIONS*, INC., ROCKWELL | ) | |
| HOLDCO, INC., ANDREWS COUNTY | ) | |
| HOLDINGS, INC., and WASTE CONTROL | ) | |
| SPECIALISTS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

### I.    INTRODUCTION

On November 16, 2016, the United States initiated this lawsuit against Energy*Solutions*, Inc. ("ES"), Rockwell Holdco, Inc., Andrews County Holdings, Inc., and Waste Control Specialists LLC ("WCS"). (D.I. 1.)   This action arises out of a merger agreement between Defendants, ES and WCS, consummated on November 18, 2015. *Id.* ¶ 4. The United States seeks to permanently enjoin the planned acquisition of WCS by ES, and have the acquisition adjudged a violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. *Id.* ¶¶ 85(a), (b)).   Presently before the court is the Defendants' Motion to Transfer Venue, pursuant to 28 U.S.C. § 1404(a). (D.I. 17). For the reasons that follow, the court will deny the Defendants' motion.

### II.    BACKGROUND

Rockwell Holdco, Inc. is the corporate parent of ES, and both are organized under the laws of Delaware. (D.I. 1 ¶ 81); (D.I. 28 at 3). ES maintains its corporate headquarters in Salt Lake City, Utah. (D.I. 28 at 3). WCS is a wholly owned subsidiary of Andrews County Holdings and

both companies are organized under the law of Delaware, WCS being a Delaware Limited Liability Company and Andrews County Holdings being a Delaware Corporation. *Id.*; (D.I. 1 ¶ 81). WCS has its corporate headquarters in Dallas, Texas. (D.I. 28 at 3).

### III.   STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Under this provision, a district court may exercise "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The purpose of transfer is to protect litigants, witnesses, and the public from the unnecessary waste of time, energy, and money. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d. 294, 299 (D. Del. 2002) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The court undertakes a two-step inquiry in order to resolve a motion to transfer. "The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio Techs., L.L.C. v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012). At each step, the defendant has the burden to demonstrate that a transfer is appropriate, *Jumara*, 55 F.3d at 879–80, and "unless the balance of convenience of the parties is *strongly* in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

2

## IV.   DISCUSSION

### A. The Propriety of the Transferee Forum

The parties do not dispute that the present action could have been brought in the Western District of Texas. Accordingly, the court proceeds to the second step of the transfer analysis.

### B. The *Jumara* Analysis

The court next must consider whether transfer to the Western District of Texas would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, accounting for the various private and public interests guarded by § 1404(a). *See Jumara,* 55 F.3d at 879. Rather than applying any "definitive formula," the court considers each of these *"Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). And the public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). Importantly, the *Jumara* analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive. *See id.* at 879.

3

### 1. Private interest factors

#### a. Plaintiff's forum preference

"The plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations omitted). Section 12 of the Clayton Act provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22 (1973). Because of these liberal venue requirements, some courts have found that the United States' choice of forum in antitrust cases should receive heightened respect. *See, e.g.*, United States v. Brown University, 772 F. Supp. 241, 242, 244 (E.D. Penn. 1991) (citing the Second Circuit); *Ferguson v. Ford Motor Co.*, 89 F. Supp. 45, 51 (S.D.N.Y. 1950), aff'd *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) ("the plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the 'convenience' of the witnesses."). As the District Court for the District of Columbia highlighted, deference to the plaintiff's choice of forum is mitigated where the plaintiffs' chosen forum does not have ties to the controversy and an interest in the subject matter or parties. *F.T.C. v. Graco Inc.*, No. 11-CV-02239 RLW, 2012 WL 3584683, at *5 (D.D.C. Jan. 26, 2012) (citing *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001)).

This factor clearly weighs in favor of denying Defendants' motion to transfer. First, deference to Plaintiff's forum choice is not mitigated here as it was in *Graco. See id.* The District of Delaware does have an interest in the subject matter and the parties because the Defendants chose to incorporate here and selected this forum as the District to litigate disputes resulting from their merger agreement. (D.I. 1 ¶ 81); (D.I. 28, Ex. A §§ 13.14, 13.15). Even though that forum

4

selection clause does not apply to the present action brought by the Government, it still ties the parties to this District.

The court additionally acknowledges that when the plaintiff brings its claim to a venue that is not its home forum, the plaintiff's forum preference is entitled to less weight. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). The court notes, however, that *Link_A_Media* is not binding on its decision here. This is an antitrust case—as opposed to a patent case—and, due to the Clayton Act's liberal venue provisions, the fact that Delaware is not the Government's home forum will not affect the weight the court gives to its forum preference.

Defendants cite case law for the proposition that it is immaterial to the analysis that the federal government is the plaintiff in this case. The court finds such case law easily distinguishable, however. Defendants contend that the court in *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21 (D.D.C. 2008) transferred the case to the Eastern District of Pennsylvania, despite the fact that it was a Government-brought antitrust action, because there were no "meaningful ties" its District. 551 F. Supp. 2d at 26. The most important reason for transfer in that case, however, was to avoid the risk that Defendants would "be subject to inconsistent judgments arising out of the same conduct" because identical cases were simultaneously pending before the court in the Eastern District of Pennsylvania. *Id.* at 32. Here, there are no identical cases pending before the Western District of Texas.

Defendants also cite *FTC v. Graco Inc.*, No. 11-cv-02239, 2012 WL 3584683 (D.D.C. Jan. 26, 2012) to support their position that "district courts routinely transfer antitrust cases to more suitable venues under Section 1404(a) when federal agencies attempt to engage in forum shopping." (D.I. 18 at 4). The court does not believe that the Government is trying to engage in forum shopping because ES and WCS are incorporated in Delaware and, therefore, at home in this

District. The factual scenario in *Graco* is also quite different from the one presented here. *See* 2012 WL 3584683, at *3–4. In *Graco*, it is not even clear whether venue would have been proper in the District of Columbia had the defendant not authored a stipulation agreeing to accept service of process and subject themselves to personal jurisdiction in all United States federal districts. *Id.* The court found that because they had personal jurisdiction over the defendants, both companies were deemed to reside in that district within the meaning of the general venue statute. *Id.* at *4. Accordingly, the court found that "residence of either ITW or ITWF in this district makes venue proper here." *Id.* In addition to the fact that venue was really only proper given the stipulation, one of the defendants was headquartered in Minnesota, almost all of the conduct giving rise to the claims occurred in Minnesota, and the Asset Purchase Agreement at issue was negotiated, drafted and executed in Minnesota. *Id.* at *5. Even still, the court found that only two private interest factors and one public interest factor weighed in favor of transfer to Minnesota. *Id.* at *5–7. The court thus finds *Graco* inapposite, and does not see it or *Cephalon* as reasons to transfer the present case out of this District.

### b. Defendant's forum preference

For the defendants' choice of forum to carry weight in the *Jumara* analysis, the defendants must demonstrate "a legitimate and rational reason for seeking an alternative forum." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, No. 12-139-GMS, 2013 U.S. Dist. LEXIS 90847, at *3 (D. Del. June 28, 2013) (citing *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012)). Defendants prefer to litigate in the Western District of Texas for five reasons: "(1) both the Texas Commission on Environmental Quality ("TCEQ") and the State of Texas are directly involved in the facts of this case and have significant interest in the transaction challenged in this law suit; (2) the Compact Waste Facility ("CWF") that is the principal asset at issue in this

lawsuit is located in the Western District of Texas and is actually owned by the state of Texas; (3) the CWF and Federal Waste Disposal Facility ("FWF") landfills were financed by public bonds issued by Andrews County, Texas, which owns most of the land and facilities where WCS operates, including the Resource Conservation and Recovery Act ("RCRA") landfill; (4) critical third-party witnesses, including Government and customer witnesses, are located in or near the Western District of Texas; and (5) the transaction underlying this case has no meaningful nexus to Delaware." (D.I. 31 at 1). Though the court is not persuaded by Defendants' reasons for transfer, it finds those reasons legitimate and rational, nonetheless. Therefore, this factor weighs in favor of granting Defendants' motion.

### c.  Whether claims arose elsewhere

At least one district court addressing whether a claim under the Clayton Act arose in that district evaluated "where the corporate decisions underlying those claims were made." *Graco*, 2012 WL 3584683, at \*5. The *Graco* court analyzed where the acquisition agreement was negotiated, drafted, and executed. *Id.*

Plaintiffs allege that negotiations for the merger agreement took place in three different locations: "Dallas, Texas; Short Hills, New Jersey; and Salt Lake City, Utah." (D.I. 28 at 9). Amy Samford, the Vice President and Chief Financial Officer of WCS, stated that negotiations and execution of the final purchase agreement occurred in Texas. (D.I. 18, Samford Decl. ¶ 7). The record so far does not definitively indicate that negotiations occurred in the Western District of Texas. The record also does not indicate where a majority of the negotiations took place. Because the factual scenario surrounding the execution of the purchase agreement is either contested or not entirely clear, the third private interest factor is largely neutral.

### d.  Convenience of the parties

In evaluating the convenience of the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio*, 910 F. Supp. 2d at 731 (citation omitted).

Defendants state that the convenience of the parties favors the Western District of Texas because that is where WCS's principal place of business and a majority of its employees are located. (D.I. 31 at 8).  While that may be true, the court does not find "convenience of the parties" to be synonymous with "convenient for WCS."  The Antitrust Division of the Department of Justice is located in Washington, D.C.  Delaware is certainly closer to Washington, D.C. than the Western District of Texas.  Additionally, there is another Defendant in this case that has its headquarters in Utah.  (D.I. 18, Robuck Decl. ¶ 3).  While ES's headquarters are not located in Delaware, they are also not located in the Western District of Texas.  Further, the Fourth Amendment to the Purchase Agreement states that ES "shall control and direct the defense of any Antitrust Action."  (D.I. 28, Ex. 3 at ¶ 2(a)).  It is unclear to the court how transferring this action to the Western District of Texas makes it any more convenient for ES, a company headquartered in Utah, to direct the defense of this case.

Both Defendants are incorporated in Delaware and the Purchase Agreement reached between the two parties designates Delaware as the venue where any disputes arising out of the agreement should be litigated.  (D.I. 28, Ex. A at § 13.15(a)).  The court agrees with Defendants that they are not obligated by the forum selection clause to litigate actions brought by third parties in Delaware.  (D.I. 31 at 2).  Nonetheless, the parties' willingness to travel to and litigate in

8

Delaware, made apparent by the forum selection clause, undermines any argument Defendants could make that Delaware is an inconvenient forum. *See Altera*, 842 F. Supp. 2d at 756 (explaining that a company cannot claim that litigation in its state of incorporation is inconvenient, absent unique circumstances). As such, Defendants do not really try to argue that litigating this matter in Delaware would be inconvenient for them. They admit in a footnote to their Reply that the parties "all have the resources to litigate in either forum." (D.I. 31 at n.3). Therefore, the fourth private interest factor is neutral since litigating in Delaware is likely just as convenient for all the parties as litigating in the Western District of Texas.[1]

### e. Convenience of witnesses

The court next considers "the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara,* 55 F.3d at 879. With respect to party witnesses, or witnesses employed by a party, the court has previously explained that they "carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Nonetheless, Plaintiffs contend that three of the four Defendants, ES, Rockwell, and Andrews County Holdings, do not have facilities or employees in the Western District of Texas. (D.I. 28 at 8).

As for third-party fact witnesses, 15 U.S.C. § 23 states that in any proceeding brought by the United States "subpoenas for witnesses who are required to attend a court of the United States

---

[1] The court is aware that the Federal Circuit admonished the District Court for making the defendant's state of incorporation "a dispositive fact in the venue transfer analysis." *Link_A_Media*, 662 F.3d at 1224. While the court is placing substantial weight on the fact that Defendant corporations are incorporated in Delaware, that fact alone is not dispositive. *See Altera*, 842 F. Supp. 2d at 756.

in any judicial district in any case, civil or criminal, arising under the antitrust laws may run into any other district." Accordingly, § 23 ensures that third-party witnesses will be available in either this District or the Western District of Texas.  Though third-party witnesses will be available in either district, how convenient or inconvenient it will be for them to testify in a given forum still weighs quite heavily in the analysis. *See Affymetrix*, 28 F. Supp. 2d at 203.

Plaintiffs and Defendants disagree over the location of a majority of the relevant fact witnesses.  Defendants contend that a number of witnesses they anticipate calling at trial are located in or near the Western District of Texas. (D.I. 18 at 6).  Such witnesses include employees from the Texas Commission on Environmental Quality ("TCEQ"), who will be called to explain the agencies role in regulating WCS's contracts and rates. *Id.* at 7.  Additionally, Defendants intend to call three of ES's customers and six of WCS's customers, all of which are located in or near the Western District of Texas. (D.I. 31 at 7).  Plaintiffs insist that many of the witnesses that Defendants call at trial will not be from the Western District of Texas because Defendants' top twenty customers are not headquartered there.  (D.I. 28 at 13–14).  Plaintiffs further state that Defendants have customers in 36 states that rely on the merging firms for radioactive-waste disposal services. (D.I. 28 at 10).  It seems that customers from any of those 36 states could be called to testify.  Defendants have, however, explicitly identified material witnesses located in or near the Western District of Texas.  Accordingly, this factor weighs in favor of granting Defendants' motion, but only slightly considering the factual dispute between the parties.

### f.  Location of books and records

The court must also consider the location of books and records relevant to the case, but again, only to the extent that those documents could not be produced in one of the fora. *Jumara*, 55 F.3d at 879.  Modern technology has made this factor largely obsolete, given the ease with

which documents can be compressed and transferred electronically. *See Cypress Semiconductor Corp., Int'l Microcircuits v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001). The court recognizes the Federal Circuit's statement in *Link_A_Media* that "while advances in technology may alter the weight given to these factors, it is improper to ignore them entirely." 662 F.3d at 1224. The court does not ignore these factors, though it is worth noting that the parties did not brief the issue. The court can assume that the location of relevant books and records is the same location as the parties' corporate headquarters. As such, relevant documents would be located in Dallas, Texas and Park City, Utah. Neither Dallas nor Park City are located in the Western District of Texas. Those locations are also not within the District of Delaware, however. Consequently, this factor does not weigh in favor of granting or denying Defendants' motion.

### 2. Public interest factors

#### a. Practical considerations

*Jumara* instructs the court to assess "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. One such factor that Defendants ask this court to consider is the involvement of a local government agency in the conduct underlying the case. *See Downing v. Globe Direct LLC*, No. CIVA 09-693, 2010 WL 2560054, at *4 (D. Del. June 18, 2010) (holding that public factors weighed in favor of transfer to Massachusetts because the conduct of a Massachusetts government agency was indirectly involved in the case). Defendants argue that TCEQ's interest in this case warrants transfer to the Western District of Texas, where TCEQ is located, because the state agency's conduct and authority are at the center of this litigation. (D.I. 31 at 5).

The court disagrees with Defendants characterization of TCEQ's involvement in this case.

It is true that TCEQ regulates certain aspects of WCS's business. Specifically, TCEQ provides WCS with the license required for it to operate in Texas, and the agency is charged with establishing the low-level radioactive disposal fees by rule. *See* Texas Commission on Environmental Quality, *Radioactive Waste*, https://www.tceq.texas.gov/permitting/radmat/licensing/rw.html (last visited December 20, 2016). While executives from TCEQ may serve as witnesses at trial, and TCEQ's pricing regulations pre- and post-merger will be useful in formulating a defense to the Government's claims, *Downing* is still inapposite.

In *Downing*, the statutory violation at issue arose when Defendants used the names and addresses of motor vehicle owners that it obtained from the Massachusetts Registry of Motor Vehicles ("MRMV") to send unsolicited junk mail. 2010 WL 2560054, at *1. The defendants maintained that such mailings were sent as part of a contract that MRMV awarded Defendants. *Id.* In addition to the fact that the private information misappropriated by Defendants came from MRMV, virtually every other *Jumara* factor weighed in favor of transfer to Massachusetts. *Id.* at *2–4. It is not hard to distinguish *Downing*—a case where the defendants used the state agency's private data in violation of the Driver Privacy Protection Act—from the current case. Here, the state agency is only tangentially related to heart of this lawsuit: a merger agreement that violates Section 7 of the Clayton Act, 15 U.S.C § 18. TCEQ merely exercises some regulatory authority over one of the parties as part of a larger federal regulatory scheme. (D.I. 28 at 15–16). Such a situation does not warrant transfer of venue to the location of the state agency as it did in *Downing*. This factor thus does not weigh in favor of or against granting Defendants' motion.

### b. Relative administrative difficulty

To assess the relative administrative difficulty of trying a case in one court over another, the court looks to the disparity in court congestion between the two venues. *See Jumara*, 55 F.3d

at 879. The parties did not brief this issue, so the court will simply note that the difference in court congestion between the Western District of Texas and this District is negligible. In the District of Delaware, the average time from filing to trial is 24.2 months, and the same metric in the Western District of Texas is 20.4 months. *See* United States Courts, *Federal Court Management Statistics,* September 2016, http://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0630.2016.pdf. Therefore, this factor does not weigh in favor of or against granting Defendants' motion.

### c. Local interest in deciding controversy

Lastly, the court considers "the local interest in deciding local controversies at home." *Jumara,* 55 F.3d at 879. This factor is neutral here because this case concerns a "question that has nationwide significance, the resolution of which will have the same effect if rendered by this court" or the Western District of Texas. *Cephalon,* 551 F. Supp. 2d at 31. Any harm that may result from the merger of WCS and ES will be felt by the firms various customers, distributed throughout 36 states, that rely on the firms for their commercial low-level radioactive waste disposal needs. (D.I. 28 at 10). This factor is therefore neutral, not weighing either for or against transfer.

### C. Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court finds the defendants have not met their burden of demonstrating that the interests of justice and convenience *strongly* favor transfer. *See Shutte,* 432 F.2d at 25. Indeed, only Defendants' forum preference weighed in favor of transfer. The convenience of the witnesses only slightly favored transfer due to the factual dispute between the parties. Defendants' forum preference is eclipsed by the Government's forum choice, which was afforded a degree of heightened deference as an individual *Jumara* factor. Though many of the factors did not weight in favor of or against transfer, the court finds Plaintiff's forum

preference, the Defendants' decision to incorporate in Delaware, and the fact that this is an anti-trust case to be enough to warrant keeping the case in this District.

## V.    CONCLUSION

For the reasons stated above, the court will deny the defendants' motions to transfer to the Western District of Texas pursuant to 28 U.S.C. § 1404(a).

Dated: December 21, 2016

UNITED STATES DISTRICT JUDGE

14