**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    *Plaintiff*,<br>v.<br><br>ENERGY SOLUTIONS, INC.,<br>ROCKWELL HOLDCO, INC.,<br>ANDREWS COUNTY HOLDINGS,<br>INC., AND WASTE CONTROL<br>SPECIALISTS LLC,<br><br>                    *Defendants*. | Civil Action No.: 1:16-cv-01056-SLR |

**PROPOSED JOINT PRETRIAL ORDER**

Plaintiff United States of America and Defendants EnergySolutions, Inc.

("EnergySolutions"), Rockwell Holdco, Inc., Andrews County Holdings, Inc., and Waste

Control Specialists LLC ("Waste Control Specialists") (collectively, the "Defendants"), by their

undersigned counsel, submit this proposed Joint Pretrial Order pursuant to Federal Rule of Civil

Procedure 26(a)(3), Delaware Local Rule 16.3, and the Scheduling Order (D.I. 103) entered

February 7, 2017.  A final Pretrial Conference is scheduled in this matter on April 18, 2017 at

10:00 a.m.  Trial of this matter is scheduled for April 24, 2017.

## I.      NATURE OF THE ACTION AND PLEADINGS

1.      This is a civil antitrust suit arising under the Antitrust Laws of the United States,

relating to EnergySolutions' acquisition of Waste Control Specialists (the "Transaction").  The

Transaction results from the sale of Waste Control Specialists to Rockwell Holdco, Inc., the

parent company of EnergySolutions.

2.      Plaintiff filed this action on November 16, 2016, seeking a permanent injunction

of the Transaction.  Plaintiff alleges that the Transaction would likely lead to a substantial

lessening of competition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, in four

relevant product markets: (1) commercial disposal of lower activity operational lower-level

radioactive waste (LLRW); (2) commercial disposal of lower activity decommissioning LLRW;

(3) commercial dispositioning of higher activity operational LLRW; and (4) commercial

dispositioning of higher activity decommissioning LLRW.  The relevant geographic market for

each are the Relevant States consisting of 36 States (Alabama, Arizona, Arkansas, California,

Delaware, Florida,  Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine,

Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New

Hampshire, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode

Island, South Dakota, Tennessee, Texas, Vermont, Virginia, West Virginia, and Wisconsin) as

well as the District of Columbia and Puerto Rico, which are considered "states" under the

applicable regulatory regime.  Herein, the relevant product markets, combined with the relevant

geographic market, are referred to as the Relevant Markets.

3.      Defendants filed a Motion to Transfer Venue on November 23, 2016.  The Court

denied the motion on December 21, 2016.

4.      EnergySolutions and Rockwell Holdco, Inc. filed their Answer on January 6,

2017, denying that the Transaction would violate the antitrust laws and alleging affirmative

defenses, asserting that the complaint fails to state a claim upon which relief can be granted; that

granting relief is contrary to the public interest; that the complaint fails to adequately allege any

relevant antitrust product or geographic markets; that the complaint fails to allege harm to

consumers, competition, or consumer welfare; that consumers have the ability to ensure they

receive competitive pricing and terms notwithstanding the Transaction; that new entry and expansion by competitors and by customers is easy and can be timely, likely, and sufficient such that it will ensure that there is no harm to competition, consumers, or consumer welfare; that the Transaction is procompetitive and will result in substantial cognizable merger-specific efficiencies, cost-synergies and other procompetitive effects that will greatly benefit consumers and that these benefits greatly outweigh any alleged anticompetitive effects; and that the Transaction will not create or enhance market power as WCS is unable to meet its financial obligations as they come due, is unable to successfully confirm a plan of reorganization under Chapter 11 of the Bankruptcy Act to continue as a going concern, and has made unsuccessful good-faith efforts to elicit reasonable alternative offers that would keep its tangible and intangible assets in the marketplace.

5.      Waste Control Specialists and Andrews County Holdings Inc. filed their Answer on January 6, 2017, denying that the Transaction would violate the antitrust laws and alleging affirmative defenses, asserting that the complaint fails to state a claim upon which relief can be granted; that the complaint fails to adequately allege any relevant antitrust product or geographic markets; that granting relief is contrary to the public interest; that the complaint fails to adequately allege harm to consumers, competition, or consumer welfare; that customers have the ability to ensure they receive competitive pricing and terms notwithstanding the Transaction; that new entry and expansion by competitors and by customers is easy and can be timely, likely, and sufficient such that it will ensure that there is no harm to competition, consumers, or consumer welfare; that the Transaction will not create or enhance market power as WCS is unable to meet its financial obligations as they come due, is unable to successfully confirm a plan of reorganization under Chapter 11 of the Bankruptcy Code to continue as a going concern, and has

made unsuccessful good-faith efforts to elicit reasonable alternative offers that would keep its tangible and intangible assets in the marketplace; that WCS' LLRW disposal services are conducted in accordance with Texas legislative regulations and actively supervised by the TCEQ such that the state action immunity doctrine applies; that the Transaction is procompetitive and will result in substantial cognizable merger-specific efficiencies, cost synergies and other procompetitive effects that will greatly benefit consumers and will outweigh any alleged anticompetitive effects.

## II.     BASIS FOR FEDERAL JURISDICTION

6.      The United States brings this action, and this Court has subject matter jurisdiction over this action, under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Defendants from Plaintiff's alleged violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## III.    STATEMENT OF ADMITTED FACTS REQUIRING NO PROOF

7.      The parties' Statement of Admitted Facts Requiring No Proof is attached as Exhibit 1.

## IV.    STATEMENT OF ISSUES OF FACT AND LAW WHICH REMAIN TO BE LITIGATED

8.      Plaintiff's Statement of Issues of Fact and Law Which Remain to be Litigated is attached as Exhibit 2-A.

9.      Defendants' Statement of Issues of Fact and Law Which Remain to be Litigated is attached as Exhibit 2-B.

## V.     EXHIBITS

10.     Plaintiff's list of exhibits it may offer at trial and Defendants' objections thereto is attached as Exhibit 3-A.  The parties agreed that any exhibits that were originally contained on both Plaintiff and Defendants' exhibit lists would remain on Plaintiff's list and be removed from Defendants' list.

11.     Defendants' list of exhibits it may offer at trial and Plaintiff's objections thereto is attached as Exhibit 3-B.

12.     Each party may use an exhibit that is listed on an opposing party's exhibit list to the same effect as though it were listed on its own exhibit list.

13.     Unless otherwise agreed to by the parties during trial, the parties will each in good faith provide to the other's counsel of record via electronic mail a written list of exhibits, by exhibit number, that it expects to use on direct examination, or the non-hostile cross-examination of a party employee or former employee, with each witness that it intends to call in Court by 6:00 p.m. two calendar days before the day the witness will testify.  Objections to any of the disclosed exhibits shall be made by no later than 6:00 p.m. the following day, and the parties will meet and confer regarding any objections by 8:00 p.m. that same evening.  Any remaining disputes with respect to the admissibility of the exhibits shall be raised with the Court as appropriate before trial resumes on the day of their anticipated use.  Exhibits to be used in direct examination of a hostile witness need not be disclosed.

14.     Pursuant to Paragraph 10 of the Joint Stipulations Regarding Discovery (D.I. 103), exhibits that are documents that were produced by any party or nonparty from its own files shall be presumed to be authentic within the meaning of Fed. R. Evid. 901, 902, and 803(6) unless the party has made a good faith objection to the exhibit's authenticity.

15.     The parties will provide, by electronic mail, color representations of any demonstrative exhibits they anticipate using on direct examination, or the non-hostile cross-examination of a party employee or former employee, of a witness at trial to the other party's counsel of record no later than 6 p.m. two calendar days before the witness is called.  Any objections to demonstrative exhibits shall be made by 6:00 p.m. the following day, and the parties shall meet and confer regarding any objections by 8:00 p.m. that same evening.  Any remaining disputes as to demonstrative exhibits shall be raised with the Court as appropriate before trial resumes on the day of their anticipated use.  Demonstrative exhibits to be used in direct examination of a hostile witness need not be disclosed.  Demonstrative exhibits that the parties intend to use at trial need not be included on their respective lists of trial exhibits and the notice provisions of this paragraph shall not apply to demonstrative exhibits created in the courtroom during testimony at trial or the enlargement, highlighting, ballooning, or excerpting of trial exhibits or testimony.

16.     The parties previously exchanged copies of their pre-marked exhibits.  The parties will submit copies of their pre-marked exhibits to the Court on April 21, 2017.

## VI.     WITNESSES TO BE CALLED IN PERSON OR BY DEPOSITION

17.     Plaintiff's list of witnesses it may call to testify at trial is attached as Exhibit 4-A. The parties have exchanged designations and counter-designations that Plaintiff may offer into evidence.

18.     Defendants' list of witnesses it may call to testify at trial is attached as Exhibit 4-B.  The parties have exchanged designations and counter-designations that Defendants may offer into evidence.

19.     Each party may call or offer deposition designations for a witness that is listed on an opposing party's witness list to the same effect as though it were listed on its own witness list.

20.     Any witness not listed in Exhibits 4-A, 4-B, or 5 will be precluded from testifying absent good cause shown, unless such witness is used solely for impeachment.

21.     Any exhibit used in a deposition shall be admitted into evidence, if the portion of the deposition where the document was used is designated and admitted, subject to any remaining objections to the exhibit contained in Exhibits 3-B and 3-C.

22.     Unless agreed to otherwise by the parties during trial, forty eight hours before the first day of trial, and every subsequent day of trial thereafter, Plaintiff and Defendants shall provide the list and order of witnesses, and whether each will testify live or by deposition, to be presented each day of trial.

23.     The listing of a witness on a party's witness list does not require that party to call that witness to testify, either in person or by deposition.

24.     Any non-Party witness that is listed to testify live may be presented by deposition instead, in accordance with the process set forth below in paragraph 25, provided the use of the deposition is otherwise allowed under the Federal Rules of Evidence, Federal Rules of Civil Procedure, or otherwise stipulated two by the parties.

25.     Except for deposition testimony used for impeachment, each party shall provide to the opposing party's counsel of record via electronic mail by 6:00 p.m. no less than four calendar days before reading or playing a videotape/DVD of a deposition in court, notice of the specific pages and lines of the deposition transcript that the party intends to use and any exhibits the party seeks to admit through the deposition testimony. The other party shall provide to the opposing party's counsel of record via electronic mail, by 6:00 p.m. the following day, any

counter-designations, identified by specific page and line numbers, and any objections to the admissibility of the exhibits sought to be admitted through the deposition designation. The parties shall meet and confer to resolve any disputes, and if the objections to the disputed testimony are not resolved by the parties' meet and confer, they will be presented to the Court as appropriate before trial resumes on the day of their anticipated use.

26.     For convenience and clarity, the parties further propose that for deposition designations that are played during trial, the party presenting a witness read or play both the designated portion of testimony and the opposing party's counter-designations, in page and line order, omitting (as agreed upon in advance by the parties) objections and colloquy where appropriate. The time for such designations and counter-designations shall be allocated to each party accordingly, by a submission to the Court reporter.

## VII.     DESIGNATION OF CONFIDENTIAL INFORMATION

27.     In order to facilitate a public trial while permitting the protection of confidential information as allowed under the Federal Rules of Civil Procedure, Plaintiff and Defendants will collaborate with non-party witnesses identified on their respective final witness lists to obtain the non-parties' proposed redactions to non-party documents identified on both Plaintiff's and Defendants' Trial Exhibit Lists and/or confidentiality designations of non-party deposition testimony.

28.     Plaintiff and Defendants will exchange these proposed redactions and/or confidentiality designations on April 13th.

29.     Defendants will also provide Plaintiff with the Defendants' proposed redactions of Defendant documents on the exhibit lists as well as deposition transcripts on April 13th.

30.     Recognizing that there is a strong presumption in favor of public access to judicial proceedings and judicial records and documents, Plaintiff and Defendants will collaborate in good faith to resolve any disputes regarding the proposed redactions and/or confidentiality designations in advance of the final pre-trial conference on April 18.

31.     Any remaining disputes as of April 18th will be addressed by the Court on a schedule and process to be determined by the judge.

## VIII.   BRIEF STATEMENTS OF INTENDED PROOFS

32.     Plaintiff's Statement of Intended Proofs is attached as Exhibit 6-A.

33.     Defendants' Statement of Intended Proofs is attached as Exhibit 6-B.

## IX.    AMENDMENTS TO PLEADINGS

34.     No party is seeking to amend its pleadings and no amendment to the pleadings will be permitted.

## X.    CERTIFICATION OF SETTLEMENT COMMUNICATIONS

35.     Plaintiff and Defendants certify that they have engaged in a good faith effort to explore the resolution of this controversy by settlement, but have not reached any agreement regarding settlement

## XI.    MISCELLANEOUS ISSUES

36.     Plaintiff's Miscellaneous Issues

    i.   Plaintiff reserves its rights to include any issues that develop prior to the Final Pretrial Conference.

    ii.   Because of a scheduling conflict, Plaintiff's economic expert, Dr. John Mayo, will not be available to testify on April 28, 2017, and should

Plaintiff call Dr. Mayo to testify as part of a rebuttal case, Plaintiff requests that such testimony will occur at a later date ordered by the Court.

iii.   Plaintiff proposes that Plaintiff and Defendants shall provide each other's counsel of record via electronic mail a written list of the names and order of the witnesses who will testify, indicating whether such witness will testify live or by deposition, by 6:00 p.m. five calendar days before the first day of trial.  Defendants object to this proposal.

iv.   The United States seeks a ruling precluding or limiting the testimony of Defendants' purported expert Larry Camper. His report is littered with proposed testimony that violates FRE 701, 702, and 703 for two reasons. First, Mr. Camper seeks to testify about how to interpret federal agency regulations. *E.g.,* Report ¶¶ 16-54, 62-66, 86-98, 113-14. As other courts have recognized, this interpretation is the role of courts, not experts.  *See, e.g., United States v. Leo*, 941 F.2d 181, 196 (3rd Cir. 1991); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64-65 (S.D.N.Y. 2001) (collecting cases and noting that "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law.").  Here, Mr. Camper has no legal training or expertise, making him unfit even if such proposed testimony were proper from a qualified expert. *See generally* Report ¶¶ 2-7.  Second, Mr. Camper improperly speculates about future regulatory actions.  *E.g.*, Report ¶ 26 (predicting that "future regulatory rulemaking may markedly improve the availability of disposal pathways"); *see also* ¶¶ 31, 63, 65, 66, 98. This proposed testimony goes

10

beyond so-called regulatory expert testimony that is typically excluded, as predictions about how agencies will act in the future is beyond the scope of any expert's expertise. Indeed, courts have been quick to exclude similar testimony from more senior former agency officials. *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (citing *In re Diet Drugs Prods. Liabl. Litig.*, MDL No. 1203, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000)) (excluding expert testimony of a former FDA official to the extent that the testimony related to the "knowledge, motivations, intent, state of mind, or purposes" of the FDA or FDA officials). Additionally, Mr. Camper's report proposes potentially problematic testimony regarding "the effects of the proposed acquisition." Report ¶ 1. Because he does not report any methodology by which he reached his conclusions, nor the basis for his proposed testimony in this case, the United States intends to test that testimony, and the perspective from which he reached it (as someone who is not trained in antitrust economics), in his upcoming deposition and reserves the right to raise this deficiency (and any other deficiencies identified in deposition) in Mr. Camper's testimony at the final pre-trial conference.

v. Defendants oppose Plaintiff's request to exclude Mr. Camper's testimony. As explained in detail in his report, Mr. Camper has more than forty years of experience in the nuclear industry, concerning issues such as radiation safety, commercial and industrial uses of nuclear energy, LLRW oversight, decommissioning, and more. Camper Report ¶¶ 2–6. For

example, he has spent decades at the Nuclear Regulatory Commission, overseeing programs involving both waste management and decommissioning projects. *Id.* ¶ 3. Given his extensive experience in the nuclear-waste industry, Mr. Camper's testimony will be helpful in explaining to the Court the landscape of the industry and customs and practices of companies operating within this complex regulatory framework. Indeed, in *Leo*, cited by Plaintiff, the Third Circuit Court of Appeals *approved* of the admission of expert testimony concerning "the practice of the industry," which someone with the expert's "extended background in the industry would probably know." *United States v. Leo*, 941 F.2d 181, 196–97 (3d Cir. 1991). This Court also recently permitted and relied upon expert testimony from industry experts concerning applicable federal regulations governing driver hours or service and compliance. *Air Prod. & Chems., Inc. v. Wiesemann*, No. CV 14-1425-SLR, 2017 WL 750694, at *11 (D. Del. Feb. 27, 2017). Finally, whatever Plaintiff's objections are to Mr. Camper's extensive experience in the industry, Plaintiff will have the opportunity to test Mr. Camper's testimony through cross examination. When the Court sits as finder of fact, it can both hear and weigh Mr. Camper's testimony appropriately. As other courts have explained, "*Daubert* is meant to 'protect *juries* from being swayed by dubious scientific testimony.' When the district court sits as the finder of fact, '‘[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.'’"

*David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (alteration and emphasis in original) (citation omitted).  The Antitrust Division has itself cited the relaxed *Daubert* standard in bench trials previously.  *See, e.g.*, Pl.'s Mem. at 3, *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004), ECF No. 246, *available at* https://www.justice.gov/atr/case-document/file/506941/download

37.      Defendants' Miscellaneous Issues

   i.   The parties propose to make opening and closing statements at trial.

   ii.  Defendants object to Plaintiff maintaining 16 party witnesses on its final witness list as inefficient because it requires significant preparation for examinations when the length of trial will prevent Plaintiff from calling more than a small fraction of the witnesses and requires Defendants' employees to travel to Delaware when they may never be called.  To ensure that any disputes arising from final witness lists may be resolved during the April 18 pre-trial conference, Defendants propose that Plaintiff's counsel provide Defendants' counsel via electronic mail a final list of the names and order of the witnesses who Plaintiff will call to testify, indicating whether such witness will testify live or by deposition, by 12:00 p.m. on April 17, 2017.   Defendants agree that Plaintiff's order of witnesses and the designation of live testimony versus deposition testimony, may change, depending upon the ultimate length of trial determined by the Court.  Although Defendants' final trial witness list and order will depend on Plaintiff's final trial witness list and order,

Defendants' counsel will attempt in good faith to prioritize their final trial witness list and will provide such list to Plaintiff's counsel via electronic mail by 12:00 p.m. on April 17, 2017.  In light of the parties' pending Joint Motion for Extension of Time (D.I. 184), Plaintiff opposes Defendants' proposal as premature.

iii.  Defendants propose that any Party witness that is listed to testify on either Party's trial witness list must be presented by live testimony at trial, and shall not be presented by deposition instead, if the Party witness is made available by a Party to testify live at trial.  Plaintiff objects to this proposal.  Plaintiff instead proposes that any Party witness that is listed to testify live may be presented by deposition instead, in accordance with the process set forth in paragraph 25, provided the use of the deposition is otherwise allowed under the Federal Rules of Evidence, Federal Rules of Civil Procedure, or otherwise stipulated two by the parties.

iv.  Defendants reserve their rights to include any issues that develop prior to the Final Pretrial Conference.

## XII.   ORDER TO CONTROL THE COURSE OF ACTION

38.     This Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

**SO ORDERED:** _____, 2017


_____
HONORABLE SUE L. ROBINSON
SENIOR UNITED STATES DISTRICT JUDGE

DATED: April 11, 2017

*/s/ Jennifer Hall*
Jennifer Hall (#5122)
Assistant United States Attorney
United States Attorney's Office
1007 Orange Street, Suite 700
Wilmington, DE 19801
(302) 573-6277

*/s/ Travis R. Chapman*
Julie Elmer
John D. Lindermuth
Travis R. Chapman
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
julie.elmer@usdoj.gov


*Counsel for Plaintiff*
*United States of America*

*/s/ Joseph O. Larkin*
Paul J. Lockwood (ID No. 3369)
Joseph O. Larkin (ID No. 4883)
Veronica B. Bartholomew (ID No. 6224)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
920 N. King Street
P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
paul.lockwood@skadden.com
joseph.larkin@skadden.com
veronica.bartholomew@skadden.com

*Counsel for Defendants*
*EnergySolutions, Inc. and Rockwell Holdco,*
*Inc.*

*/s/ Donald E. Reid*
Donald E. Reid (ID No. 1058)
William M. Lafferty (ID No. 2755)
MORRIS NICHOLS ARSHT & TUNNELL
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
dreid@mnat.com
wlafferty@mnat.com

*Counsel for Defendants Waste Control*
*Specialists LLC and Andrews County*
*Holdings, Inc.*

OF COUNSEL:

Tara L. Reinhart (*pro hac vice*)
Steven C. Sunshine (*pro hac vice*)
Tiffany Rider (*pro hac vice*)
Steven Albertson (*pro hac vice*)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, D.C. 20005

Paul M. Eckles (*pro hac vice*)
Kenneth B. Schwartz (*pro hac vice*)
Charles Crandall (*pro hac vice*)
Luke T. Taeschler (*pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
4 Times Square
New York, New York 10036

*Counsel for Defendants EnergySolutions, Inc.*
*and Rockwell Holdco, Inc.*

Joseph Ostoyich (*pro hac vice*)
Hugh M. Hollman (*pro hac vice*)
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW #120
Washington, D.C. 20005
(202) 639-7700
joseph.ostoyich@bakerbotts.com
hugh.hollman@bakerbotts.com

Van H. Beckwith
BAKER BOTTS LLP
2001 Ross Avenue
Suite 600
Dallas, Texas 75201
van.beckwith@bakerbotts.com

*Counsel for Defendants Waste Control*
*Specialists LLC and Andrews County*
*Holdings, Inc.*